Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| DRA. NATALIA YAMILETTE CÁRDENAS SUÁREZ<br><br>Apelante<br><br>V.<br><br>UNIVERSIDAD DE PUERTO RICO; DRA. MYRNA L. QUIÑONES FELICIANO en su capacidad oficial como RECTORA DEL RECINTO DE CIENCIAS MÉDICAS DE LA UNIVERSIDAD DE PUERTO RICO<br><br>Apelados | TA2025AP00667 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2025CV10520 (905)<br><br>Sobre: Sentencia Declaratoria; Injunction Preliminar y Permanente |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2026.

Comparece ante nos la Dra. Natalia Y. Cárdenas Suárez (en adelante, Dra. Cárdenas Suárez o parte apelante) mediante recurso de *Apelación Civil*. Nos solicita que revoquemos la *Sentencia* emitida y notificada el 20 de noviembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI). En el referido dictamen, el **TPI** desestimó la causa de acción presentada por la **parte apelante** por no cumplir con los estándares necesarios de un recurso extraordinario.

Examinado el recurso, resolvemos confirmar la *Sentencia* apelada. Veamos los fundamentos.

**-I-**

El **17 de noviembre de 2025**, la **Dra. Cárdenas Suárez** instó una *Demanda* sobre *injunction* preliminar, *injunction* permanente y sentencia declaratoria contra la Universidad de Puerto Rico (en

adelante, UPR) y contra la Dra. Myrna L. Quiñones Feliciano en su capacidad oficial como Rectora del Recinto de Ciencias Médicas de la UPR (en conjunto, parte apelada).[1] Según surge de la *Demanda*, la **parte apelante** ingresó al Programa de Residencia de Obstetricia y Ginecología de la Escuela de Medicina del Recinto de Ciencias Médicas de la UPR (en adelante, Programa de Residencia) el 13 de marzo de 2023. La **Dra. Cárdenas Suárez** prestó servicios como médico residente en el Departamento de Obstetricia y Ginecología del Hospital Universitario, sus dependencias y hospitales afiliados desde el 1 de julio de 2023 hasta el 14 de octubre de 2025. Ello se debió a que el Comité de Competencias Clínicas (en adelante, CCC) suspendió sumariamente a la **parte apelante** del **Programa de Residencia** desde el 13 de septiembre de 2025. Posteriormente, el **CCC** votó a favor de la expulsión de la **Dra. Cárdenas Suárez** efectiva el 14 de octubre de 2025.

En esencia, la **parte apelante** alegó que su destitución no se debía a un criterio académico verdadero, sino que perseguía un fin ilícito o ilegal. De igual forma, adujo que las medidas disciplinarias tomadas en su contra eran arbitrarias, caprichosas e irrazonables. Inclusive, catalogó las medidas disciplinarias como un agravio de patente intensidad a sus derechos constitucionales fundamentales al debido proceso de ley, tanto en su modalidad sustantiva como procesal. Por ello, la **Dra. Cárdenas Suárez** le solicitó al **TPI** que ordenara su restitución inmediata al **Programa de Residencia** y de modo que sea reinstalada en todas sus capacidades, responsabilidades, beneficios y funciones. Asimismo, solicitó que se declarase ilegal e inconstitucional tanto la suspensión sumaria, como su expulsión y en consecuencia, decretara el carácter permanente de su reinstalación al **Programa de Residencia**. Finalmente, solicitó el pago de costas y honorarios de abogado.

---

[1] Entrada Núm. 1 de SUMAC.

Así las cosas, el TPI emitió una *Orden de Mostrar Causa* el mismo **17 de noviembre de 2025**;[2] señaló que, de las propias alegaciones de la *Demanda,* se desprendía que la **Dra. Cárdenas Suárez** se encontraba en un trámite administrativo ante el Comité de Educación Médica Graduada (en adelante, CEMG). Inclusive, señaló que la **parte apelante** sostuvo una reunión con el **CEMG** tan reciente como el **6 de noviembre de 2025**. Por esta razón, le ordenó a que mostrara causa por la cual no debía declararse sin jurisdicción y, en consecuencia, requerirle el agotamiento del trámite administrativo. Para ello, le concedió un término de cinco (5) días.

Oportunamente, la **Dra. Cárdenas Suárez** presentó su *Moción en Cumplimiento de Orden de Mostrar Causa* el **18 de noviembre de 2025**.[3] Adujo que, luego de que el **TPI** emitiera la *Orden de Mostrar Causa,* la Decana de la Escuela de Medicina de la UPR le notificó mediante carta la ratificación de su expulsión del **Programa de Residencia**.[4] Sostuvo que dicha ratificación ilustraba su reclamo de intervención judicial ya que, a su entender, el proceso disciplinario seguido por la institución universitaria era informal y carente de garantías procesales mínimas. De otro lado, arguyó que su expulsión era un subterfugio para evadir la verdadera razón de la medida disciplinaria tomada en su contra por lo que, se trata de un asunto de derecho que no requería pericia administrativa. Asimismo, argumentó que la violación de sus derechos constitucionales constituía causa de excepción para preterir u obviar el cauce administrativo. Además, arguyó que el recurso ante el **CEMG** no constituía un remedio administrativo adecuado, práctico ni efectivo para vindicar sus derechos.

Luego de examinar la *Demanda* y la *Moción en Cumplimiento de Orden de Mostrar Causa,* la *Demanda* fue desestimada mediante

---

[2] Entrada Núm. 2 de SUMAC.
[3] Entrada Núm. 3 de SUMAC.
[4] Véase, Anejo 1 de la Entrada Núm. 3 de SUMAC.

*Sentencia* del **20 de noviembre de 2025**.[5] En apretada síntesis, el **TPI** razonó que de la propia *Demanda* surgía que la **Dra. Cárdenas Suárez** inició un proceso dentro de la **UPR**. Esto es, apeló su suspensión sumaria sin sueldo, presentó una propuesta de plan de acción personalizado y solicitó que se le informaran las razones y evidencia que sustentaban la medida disciplinaria. Por lo cual, notó que luego de que la **parte apelante** presentara cierta información requerida, el **CCC** tomó la determinación de expulsarla del **Programa de Residencia** y, esta a su vez, también apeló dicha determinación. Resolvió que desde la fecha de su expulsión, la **parte apelante** permaneció inmersa y activa en un procedimiento administrativo ante la institución universitaria mediante la impugnación de su expulsión. Inclusive, que en la misiva suscrita por la Decana de la Escuela de Medicina de la UPR se le informó a la **Dra. Cárdenas Suárez** la ratificación de su expulsión y su derecho a solicitar reconsideración dentro de un término de diez (10) días laborables. Igualmente, se le informó que de ejercer dicho derecho, el asunto sería referido a un comité independiente, entre otros trámites administrativos subsiguientes. En consecuencia, concluyó que existía un cauce administrativo adecuado y especializado dentro de la **UPR** para atender la controversia relativa a la corrección, razonabilidad y legalidad de la medida disciplinaria impuesta contra la **parte apelante**. Ante este cuadro, dictó que le correspondía a la **parte apelante** agotar los remedios administrativos disponibles conforme el procedimiento establecido por la institución universitaria. Solo así, se podría emitir una decisión final susceptible de revisión ante este foro apelativo conforme a la Sección 4.2 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico.*

---

[5] Entrada Núm. 4 de SUMAC.

De otro lado, el **TPI** señaló que la mera alegación de "agravio de patente intensidad" no sustituía el estándar jurisprudencial de articular hechos específicos que revelaran la inutilidad del trámite administrativo o la imposibilidad real de obtener reparación a través de este. De igual forma, señaló que los alegados daños irreparables invocados por la **parte apelante** eran especulativos y generalizados.

En desacuerdo, la **Dra. Cárdenas Suárez** acude ante nos mediante el presente recurso de *Apelación Civil* y plantea la comisión de los siguientes errores:

> **PRIMER SEÑALAMIENTO DE ERROR:** Erró el Tribunal de Primera Instancia al ignorar las alegaciones sobre violaciones de patente intensidad al derecho constitucional fundamental del debido proceso de ley (modalidad sustantiva y procesal) y, en su consecuencia, decretar que la Apelante tiene que agotar los remedios administrativos disponibles conforme al procedimiento establecido por la institución universitaria.

> **SEGUNDO SEÑALAMIENTO DE ERROR:** Erró el Tribunal de Primera Instancia al aplicar mecánicamente la doctrina de agotamiento de remedios administrativos para denegar los remedios de *injunction* preliminar, interdicto permanente y sentencia declaratoria, sin ponderar que estas figuras procesales existen precisamente para atender situaciones donde los foros administrativos son estructuralmente incapaces de ofrecer un remedio adecuado, oportuno e imparcial, y donde la suspensión sumaria y la expulsión de una médico residente del Programa de Residencia de Obstetricia y Ginecología de la UPR en represalia por denunciar un evento clínico crítico constituye un daño irreparable de proporciones extraordinarias.

> **TERCER SEÑALAMIENTO DE ERROR:** Erró el Tribunal de Primera Instancia al omitir considerar las alegaciones específicas de represalia profesional contenidas en la demanda, las cuales demuestran que la suspensión sumaria y la separación permanente de la Apelante no respondieron a criterios académicos legítimos, sino que fueron el resultado de medidas adversas adoptadas inmediatamente después de que la Apelante identificara y reportara la negligencia ocurrida en la Sala de Emergencias durante el evento centinela. Estas alegaciones, de tomarse como ciertas en esta etapa, obligaban al Tribunal a permitir acceso a descubrimiento de prueba y a reconocer a la Apelante su derecho a su día en corte, en vez de remitirla a un proceso interno controlado por la propia institución universitaria.

Oportunamente, la **parte apelada** compareció mediante escrito en *Alegato en Oposición a Recurso de Apelación*. En apretada síntesis, aseveró que el **TPI** actuó correctamente al abstenerse de utilizar su poder revisor hasta tanto no concluyera el proceso administrativo. Asimismo, señaló que la determinación apelada no

priva a la **Dra. Cárdenas Suárez** de su día en corte, sino que le exigía cumplir con el cauce procesal.

**-II-**

**-A-**

La jurisprudencia ha sido clara al establecer los criterios que se deben evaluar para determinar si procede la concesión de un *injunction*. A saber: (1) la naturaleza de los daños que pueden ocasionárseles a las partes de concederlo o denegarlo; (2) su irreparabilidad o la existencia de un remedio adecuado en ley; (3) la probabilidad de que la parte promovente prevalezca en los méritos; (4) la probabilidad de que la causa se torne académica; y (5) el posible impacto en el interés público.[6] Nuestro Alto Foro ha enfatizado en lo siguiente:

> *[a]l aplicar los criterios antes enumerados, hemos reiterado que la concesión o denegación [de un injunction] exige que la parte promovente demuestre la ausencia de un remedio adecuado en ley. Además, hemos enfatizado la necesidad de que la parte promovente demuestre la existencia de un daño irreparable que no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles.*[7]

El Tribunal Supremo de Puerto Rico ha señalado que se pueden considerar remedios legales adecuados alternos al remedio extraordinario de *injunction*, los siguientes: aquellos que puedan otorgarse en una acción por daños y perjuicios, en una acción criminal o cualquiera otra acción disponible.[8] Específicamente se señala que *mientras exista algún remedio eficaz, completo y adecuado en ley, no se considera el daño como irreparable, por lo que no procederá conceder el injunction.*[9] El daño irreparable ha sido definido como:

> *[a]quél que no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles. El daño irreparable es aquél que no puede ser apreciado con certeza ni debidamente compensado por*

---

[6] *Ramírez Kurtz v. Damiani Ramos,* 214 DPR 986, 998 (2024); *Asoc. Vec. v. Caparra v. Asoc. Fom. Educ.,* 173 DPR 304, 319 (2008).

[7] *Íd.,* pág. 320. Énfasis nuestro.

[8] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 426 (2008).

[9] *Íd.,* pág. 427. Énfasis nuestro.

> ***cualquier indemnización que pudiera recobrarse en un pleito en ley.*[10]**

Finalmente, valga señalar que constituye doctrina reiterada en nuestra jurisdicción, el que *un tribunal revisor no debe sustituir su criterio por el del foro de instancia,* salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[11]

**-B-**

Por otra parte, la doctrina de agotamiento de remedios administrativos se aplica en casos en los cuales una parte, que instó o tiene instada una acción ante un ente administrativo, recurre ante el foro judicial teniendo aún remedios disponibles ante la agencia.[12] En otras palabras, esta doctrina de abstención judicial

> *[p]resupone la existencia de un procedimiento administrativo que comenzó pero que no finalizó porque la parte concernida recurrió al foro judicial antes de que se completase el procedimiento administrativo referido. Por ello, para que pueda aplicarse la doctrina de agotar remedios y proceda resolverse que la parte concernida no pueda acudir todavía al foro judicial, es menester que exista aún alguna fase del procedimiento administrativo que la parte concernida deba agotar.*[13]

El objetivo de esta norma es determinar en qué etapa procede la intervención judicial sobre un caso presentado inicialmente ante un foro administrativo.[14] La aplicación de esta doctrina logra los siguientes propósitos:

> *(1) que la agencia concernida, antes de la intervención judicial, pueda desarrollar un historial completo del asunto ante su consideración; (2) que la agencia pueda utilizar el conocimiento especializado de sus funciones para adoptar las medidas correspondientes de conformidad con la política pública formulada por la entidad, y (3) que la agencia pueda aplicar uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores o reconsiderar el alcance de sus pronunciamientos.*[15]

---

[10] *Misión Ind. P.R. v. J.P. y A.A.A.,* 142 DPR 656, 681 (1997). Énfasis nuestro. Citas omitidas.

[11] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).

[12] *Colón Rivera, et al. v. ELA,* 189 DPR 1033, 1058 (2013); *Mun. de Caguas v. AT&T,* 154 DPR 401, 408 (2001).

[13] *Asoc. Pesc. Pta. Figueras v. Pto. del Rey,* 155 DPR 906, 918 (2001).

[14] *S.L.G. Flores-Jiménez v. Colberg,* 173 DPR 843, 851 (2008); *Mun. de Caguas v. AT&T, supra,* pág. 407.

[15] *Procuradora Paciente v. MCS,* 163 DPR 21, 35 (2004).

Es improcedente preterir el cauce administrativo para acceder a la jurisdicción de los tribunales, dado que el agotamiento de remedios constituye un requisito jurisdiccional.[16] Sin embargo, existen ciertas instancias en las que, por excepción, se permite eludir el trámite administrativo.[17] La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU) contempla las excepciones a esta doctrina al establecer que:

> *[e]l tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa.*[18]

**-III-**

En el presente caso, surge de la propia *Demanda* que el 18 de septiembre de 2025 la **Dra. Cárdenas Suárez** comenzó un procedimiento administrativo con la presentación de una carta de apelación en cuanto a la determinación de su suspensión sumaria sin paga del **Programa de Residencia**. Que posteriormente, apeló la determinación de su expulsión del **Programa de Residencia**. Inclusive, aún restan otros remedios de reconsideración y apelativos en el cauce administrativo a los que la **parte apelante** puede acudir. Ciertamente, el procedimiento administrativo no ha culminado.

Al igual que el **TPI**, encontramos que el trámite administrativo en el que se encuentra la **parte apelante** es el adecuado y especializado para atender la controversia relativa a la corrección, razonabilidad y legalidad de la medida disciplinaria impuesta contra la parte apelante. En consecuencia, resulta evidente que la **Dra.**

---

[16] *Guzmán y otros v. E.L.A.*, 156 DPR 693, 714 (2002); *Asoc. Pesc. Pta. Figueras v. Pto. del Rey, supra*, pág. 917.

[17] *Procuradora Paciente v. MCS, supra*, pág. 36.

[18] Sec. 4.3 de la LPAU, 3 LPRA sec. 9673.

**Cárdenas Suárez** no es acreedora del remedio extraordinario de *injunction*, toda vez que tiene disponible otro remedio adecuado en ley.

**-IV-**

Por los fundamentos expresados, resolvemos confirmar la *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones